CASE 24—PETITION ORDINARY—JUNE 24.

# Patrick, &c., vs. Swinney.

APPEAL FROM BATH CIRCUIT COURT.

1. A covenant which warranted a slave "*to be sound in body and mind, and a slave for life,*" did not constitute or import a warranty of title in the covenantors.

2. In an action on a note executed for the price of the slave, without averring any warranty of title, either expressed or implied, or a breach of such warranty, the allegations of the answer, "*that the vendors had no title to the slave, and had not, and could not, and never have made any title to the vendee,*" did not present a good defense, as all this may be true, and the vendee have known it, and contracted to take the slave without any assurance of title whatever.

3. For a breach of the warranty of title, if there was such a warranty when the vendee had sold the slave, and had never been evicted, his recovery could only be nominal.

4. Permitting an amended answer to be filed, which did not present a good defense, to the filing of which the plaintiff objected, was error, and being excepted to, is one of the grounds of reversal in this case.

L. W. ANDREWS, and
B. D. LACY,                                                    For Appellants,

CITED—

13 *B. Monroe*, 474.

GUDGELL & NESBITT, and
TURNER & CORNELISON,                                          For Appellee,

CITED—

*Constitution of United States*, 13*th Amendment.*
12 *B. Mon.*, 329 ; *Johnson and wife vs. Jones.*
2 *Duvall*, 233 ; *Thomas vs. Hall and wife.*
1 *Met.*, 570 ; *Tipton vs. Triplett.*

JUDGE PETERS DELIVERED THE OPINION OF THE COURT:

On the 19th of February, 1859, this action was brought by appellants on a note for seven hundred dollars, executed to them on the 7th of April, 1858, by appellees, and due the 25th of December thereafter.

Appellees filed an answer on the 1st of April, 1859, in which they allege the note was executed for the price of a female slave, described by name, age, &c., and whom, as they allege, appellants warranted to be sound in body and mind, and a slave for life ; and then allege that she was not sound in body, but had a tumor on her neck, and some disorder similar to negro consumption or "*cachexy.*" That appellants knew she was unsound at the time of the sale, and for a long time before, and, by reason of said unsoundness, appellees had sustained damage to the amount of four hundred dollars, plead the same as a counter-claim against appellants' demand, and pray judgment accordingly ; but do not refer to, nor

allege that, any bill of sale was executed; subsequently,. however, the filing of a covenant of Patrick and wife to Margaret Swinney is noted as being filed by appellees on the record, and a bill of sale from the former to the latter is copied in the transcript before us, which will be again referred to. At the September term, 1859, judgment was rendered in favor of appellants for three hundred dollars, the amount not controverted in the answer, with interest from the date of the note, and costs, and a reply filed by appellants to the counter-claim, traversing the allegation of unsoundness. From that time until the March term, 1865, the cause rested in undisturbed repose; nor was there any material order made in the case until at the September term, 1867, when appellees asked for permission to file an amended answer, which was objected to by appellants and refused by the court, and then there was a mis-trial.

At the September term, 1868, appellees made a second effort to file an amended answer, containing two paragraphs, to the filing of which appellants objected; but the court permitted the first paragraph to be filed, and rejected the second; to which rulings both parties excepted.

In the amended answer, or the first paragraph thereof, which the court permitted to be filed, it is alleged that the only consideration for the note sued on was the price of the female slave, *Mima*, whom the plaintiff *"attempted"* to sell to Margaret Swinney; that at the death of Daniel Duty, February, 1858, he was the owner of said slave, who, with a number of other slaves, was devised or descended to certain persons therein named as his children, all of whom are alleged then to have been married women, except Mrs. Nancy Craycraft; and appellees then aver " that no legal division of said slaves was ever made

among the said children of Daniel Duty; that the plaintiffs did not have the title and ownership of said Mima, and could not, and never have made any title to the defendant, Margaret *Swinney*, for said slave."

From the foregoing quotation of all the material facts alleged, it must be observed, that it is not averred that there was any bill of sale made for the slave; nor is there an averment that there was any warranty of title, either express or implied.

A covenant, as the record shows, from appellants to Margaret Swinney, was filed by appellees. A bill of sale is in the record, bearing the same date with the note sued on, for the slave named in the pleading; and as no other paper answering the description is found, that must be the one referred to in the order; from which it appears that the covenantors warranted the slave Mima to be *sound in body and mind, and a slave for life*—nothing more.

The words do not constitute a warranty of title; neither, according to the literal interpretation thereof, do they import a warranty, but refer exclusively to the condition of the woman Mima as a slave for life, and sound in body and mind.

Of this the very skillful pleader doubtless was aware who drew the amended answer, and did not, therefore, refer to the bill of sale, nor aver that it contained a warranty of title; nor does he allege that, at the date of the sale, the vendors were in possession of the slave, who was, in law, regarded as personal estate, and rely on an implied warranty of title, and aver a breach thereof, but without averring any warranty, either express or implied, or a breach of warranty, but merely asserts that the vendors had no title to the slave, " and had not and could not, and never have made, any title to the vendee."

All this may be true, and the vendee have known it, and contracted to take the slave without any assurance of title whatever; and that is rather to be inferred from the fact that there is a bill of sale and no warranty of title.

It is true that there was no demurrer to the amended answer; but if the answer did not present a good defense, the court should not have permitted it to have been filed, especially after a delay of nine years, and should have sustained the objections of appellant to filing it.

But the court, *sua sponte*, gave instruction No. 5, to which appellants excepted; by which the jury were told that the bill of sale of the plaintiffs passed the life estate of the husband, H. Patrick, to the one sixth of said slave; and if said life estate was worth less than three hundred dollars, they should find for defendants. This instruction withdrew from the jury the consideration of the evidence offered by appellants, that appellees had sold the slave; when, if they had believed that fact from the evidence, and appellees' vendee had never been evicted, their finding for a breach of warranty of title, if they believed there was a warranty of title, could only be, in that event, nominal.

Wherefore, for the giving of said instruction without the qualification aforesaid, and permitting said amended answer to be filed, the judgment is *reversed*, and the cause is remanded, with directions to award a new trial, and for further proceedings consistent herewith.